# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VOLTAIRE ASSET MANAGERS II, LLC, | § | |
| | § | |
| *Appellant*, | § | |
| | § | |
| v. | § | Civil Action No. SA-19-CV-341-XR |
| | § | |
| TRESHA-MOB, LLC, | § | |
| | § | |
| *Appellee*. | § | |

## ORDER DENYING STAY PENDING APPEAL

On this date, the Court considered the status of this case. On April 3, 2019, based on the representations made in the Emergency Motion to Stay Sale Order Pending Appeal filed by Appellant Voltaire Asset Managers II, LLC (docket no. 2), the Court granted ex parte a temporary stay (docket no. 3) of the Bankruptcy Court's sale order.

On April 8, Voltaire filed a Motion for Expedited Briefing Schedule (docket no. 5), pursuant to Rule 8013(a)(2)(B) of the Federal Rules of Bankruptcy Procedure. Later the same day, Palomar, LLC, and Camco Land, Ltd., moved to intervene in this appeal (docket nos. 8, 11). Intervenors' motions are granted: Camco and Palomar have satisfied the intervention requirements of Bankruptcy Rule 8013(g). The intervenors' motions for leave to respond to Voltaire's motion for stay pending appeal (docket nos. 12, 14) are also granted.

The Court's prior order stated that the temporary stay will expire April 17 and that after hearing from Appellee Tresha-Mob, LLC, the Court would consider whether to continue the stay pending completion of the appeal or whether to dissolve the stay. The Court did not grant a full stay pending appeal, but rather granted a temporary stay based on the urgencies presented in Voltaire's

1

motion. Although the debtor, Tresha-Mob, did respond to the order granting temporary stay, the intervenors have informed the Court that Appellant Voltaire is the managing member of Appellee Tresha-Mob, and thus the intervenors, not Tresha-Mob, are the true opposition to the stay Voltaire seeks and this appeal generally.

With the benefit of the additional arguments and factual context these intervenors' responses provide, the Court now considers whether the Sale Order should be stayed pending appeal. As stated below, the Court concludes it should not be stayed, and thus the temporary stay is dissolved.

**Background**

This case comes before the Court on appeal from an April 2 order of the Bankruptcy Court, the Order Relating to the Debtor's Motion to (A) Establish Bidding Procedures in Connection with the Sale of Substantially All of the Debtor's Assets and Assignments of Assumed Leases; (B) Authorize the Debtor to Select a Designated Purchaser or a Stalking Horse Bidder and/or Hold an auction; (C) Approve the Form and Manner of Notice; and (D) Grant Related Relief (the "Sale Order"). *See In re: Tresha-Mob, LLC*, No. 18-52420-RBK, ECF No. 123.

The Sale Order approved the results of a March 27 auction sponsored by the Bankruptcy Court. In that auction, Intervenor Camco Land, Ltd., submitted the winning bid for the purchase of a medical office building, the principal asset of debtor Tresha-Mob, LLC. Bankruptcy Judge Ronald King deemed Camco a good faith purchaser. Voltaire's challenge to this order (and the auction it approved) stems from Judge King's exclusion from the bidding process of Cherish Medical Office Building, LLC.

Under the Bidding Procedures established for this auction, approved on March 5, Tresha-Mob designated four Qualified Bidders. Camco and Cherish were two of these Qualified Bidders.

Palomar, LLC (an intervenor in this case and, along with Voltaire, one of two members of Tresha-Mob) claims it learned the identities of the bidders the day before the auction. Docket no. 12-1 at 5. It then "discovered a long-standing business relationship" between Voltaire manager Michael Horrell and Cherish principal Randy Soule that included, in 2014, "suspicious activity between Horrell and Soule involving conveying and re-conveying between themselves . . . title to the same real property being auctioned by the Debtor." *Id.* At the auction, Palomar argued that Cherish should not be permitted to bid because of this potentially undisclosed relationship. *Id.*

The Bidding Procedures state "[a]ll Qualified Bidders must attend" the auction, docket no. 13-4 at 5, but the only Cherish representative at the auction was attorney Michael Colvard, who stated that he was retained by Cherish the day before the auction, knew almost no information about Cherish, and was authorized only to submit a bid. Judge King sustained Palomar's objection and excluded Cherish from the bidding. At the hearing, Judge King stated:

> [Cherish does not] have anybody here, and we don't know what their motivation is or what their interest in this is. And I'm concerned about the sanctity of a bidding process where an insider might come in and bid things up. Whether they intend to close or whether they don't intend to close, it could have an adverse effect on the other bidders and on the price. And it may increase it. But if it did increase it, it might increase it artificially.

Docket no. 12-1 at 16.

Voltaire then twice challenged Judge King's ruling in a motion for reconsideration and a motion for authority to prosecute a limited objection to the sale hearing on behalf of the debtor. *See In re: Tresha-Mob, LLC*, No. 18-52420-RBK, ECF Nos. 113, 121. Judge King denied both motions.

As to the motion to reconsider, Judge King stated

> First, no party-in-interest objected to the disqualification of [Cherish] as a bidder at the March 27, 2019 hearing (the 'Sale Hearing'). Only Cherish—a bidder that lacked standing to object to its own disqualification—objected at the Sale Hearing.

3

> Although [Voltaire] had to opportunity to appear at the Sale Hearing and object to the disqualification of Cherish, Voltaire did not appear, let alone object. Second, despite the assertions made by Voltaire in its *Objection,* for the reasons stated by the Court on the record at the Sale Hearing, the Court is still of the opinion that Cherish would not qualify as a 'good faith' bidder or purchaser under 11 U.S.C. § 363(m).

*In re: Tresha-Mob, LLC*, No. 18-52420-RBK, ECF No. 118.

As to the motion for authority to prosecute a limited objection, Judge King rejected Voltaire's "one-track value-maximization argument that ignores mountains of precedent in which trustees, debtors-in-possession, and courts have rejected the highest bid when it was not the 'best bid.'" *In re: Tresha-Mob, LLC*, No. 18-52420-RBK, ECF No. 125. He continued:

> In determining whether the highest bid is the "best bid," the fiduciary and reviewing court must consider factors such as "the risks associated with each bid and the probabilities that the proposed terms will come to fruition" as well as "contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing." . . . . Part and parcel with those considerations is the Court's ability to issue a "good faith" finding under § 363(m). Indeed, some courts have even adopted a per se approach that a court can never approve a § 363 sale without a good faith finding. . . . Although this Court stops short of adopting a per se "good faith" prerequisite, it reaffirms its finding that Cherish is not a good faith bidder here.

*Id.* (citations omitted).

King detailed his reasoning for this conclusion:

> Before the Sale Hearing, Cherish was the only bidder that never made a site visit to the property, never completed a nondisclosure agreement to access the virtual data room, never actually accessed the virtual data room to conduct due diligence, and never even corresponded with the broker, CBRE. *See* Tr. at pp. 30–32. At the Sale Hearing, Cherish's representative would not and could not disclose Cherish's principals to the Court. In fact, the representative told the Court that, prior to the Sale Hearing "[t]he only conversations [he] had with [Cherish] [were about] the bidding process, the bidding price and the tenant estoppel certificates." Tr. at p. 29. Because of that, the Court exercised its discretion to disqualify Cherish.
> None of the new facts disclosed by Voltaire or Cherish in the *Limited Objection* and *Cherish Joinder*, respectively, change that finding. In fact, the new evidence from the *Limited Objection* and *Cherish Joinder* reinforces the Court's finding that Cherish truly has failed to disclose to the Court its inextricable ties to the Debtor. Attached to the *Cherish Joinder* is the Affidavit of Randall E. Soulé,

4

representative of Cherish Medical Office Building, LLC. *See* ECF No. 122, Ex. 1. In that Affidavit, while Mr. Soulé adamantly disclaims any interest "personally or through a company of TRESHA-MOB," he also includes a storied history with the Debtor and Michael Horrell, including a series of transactions involving the subject property of the Sale. *See id.* at pp. 2–3. These hide-the-ball tactics, in hopes that no one will connect the dots, gravely concerned the Court at the Sale Hearing. And the undisclosed entanglement between Mr. Soulé, Mr. Horrell, and the Debtor reinforces the Court's finding that Cherish should not be qualified to bid, much less as a "good faith" bidder. Instead, Cherish's bid feels a bit Potemkin—a carefully-crafted façade of independence hiding a different reality.

*Id.*

Here, Voltaire argues Judge King abused his discretion because Cherish was prepared to top Camco's winning bid and because Cherish's exclusion was contrary to several provisions in the Bidding Procedures.

### Discussion

**1. Legal Standard**

"[A] stay of a bankruptcy matter pending appeal is an extraordinary form of relief requiring a substantial showing by the movant, and is not to be granted lightly. *Yucaipa Corp. Initiatives Fund, ILP v. Piccadilly Restaurants, LLC*, 2014 WL 1871889, at *2 (W.D. La. May 6, 2014). Whether to issue a stay pending appeal requires consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

**2. Application**

In issuing a temporary stay, the Court found that Voltaire made a sufficient showing to temporarily stay the sale, particularly given that this appeal was filed on April 2 and the sale was

scheduled to close on April 3. Now, with the benefit of the additional information and arguments presented in the intervenors' responses, the Court finds that a permanent stay pending appeal is not justified. Accordingly, the temporary stay is dissolved and Voltaire's motion for a stay pending appeal is denied.

### a. Likelihood of Success on the Merits

Although at this stage Voltaire has not designated its issues for appeal, Voltaire's emergency motion points only to factual findings of the Bankruptcy Court that Voltaire considers an abuse of discretion. Voltaire claims Judge King abused his discretion by improperly excluding Cherish from the auction. As relief, Voltaire asks that the auction be reopened so all four Qualified Bidders—including Cherish—can bid. But Voltaire's grievances are all factual determinations, which this Court reverses only if clearly erroneous.

The Court would only reverse Judge King's exclusion of Cherish if "considering all the evidence, [it] is left with the definite and firm conviction that a mistake has been made." *In re Kemp*, 52 F.3d 546, 550 (5th Cir.1995). "Given this deferential standard of review, it is difficult for an appellant to obtain a stay pending pursuit of an appeal that hinges primarily upon invalidating a bankruptcy court's finding of fact." *Yucaipa*, 2014 WL 1871889, at *3 (citing *In re Scotia Development LLC*, No. 07–20027, *4 (Bankr. S.D. Tex. July 15, 2008) (" . . . Thus with respect to questions of fact, the movant usually fails to satisfy the element for a stay pending appeal that there be a likelihood of success on the merits.")).

Here, as quoted above at length, Judge King, who is far more acquainted with the facts than this Court, considered the exclusion of Cherish on three occasions: at the auction, in the motion for reconsideration, and in the limited objection. This Court is aware of no evidence now before it that

Judge King did not already consider. Nothing before the Court leaves it with the "definite and firm conviction" that Judge King mistakenly excluded Cherish. Thus, the likelihood of success on the merits prong does not weigh in favor of a stay.

### b. Irreparable Injury

Second, the Court finds no irreparable injury. Voltaire's sole asserted harm is that "[p]ursuant to 11 U.S.C. § 363(m), a court cannot unwind on appeal the sale of estate property to a good-faith purchaser," so "Voltaire's ability to appeal is diminishing and may effectively be mooted by the closing of the sale. Docket no. 2 at 10. However, "[c]ourts have consistently held the risk of equitable mootness alone does not establish the irreparable injury needed to obtain a stay pending appeal." *Yucaipa*, 2014 Wl 1871889, at *4. This Court has previously rejected an argument that a party would be irreparably injured absent a stay because a sale to a good faith purchaser would moot the appeal. *In re Camp Arrowhead*, 2010 WL 363773 (W.D. Tex. Jan. 22, 2010). In that case, the Court stated that this injury "cannot alone entitle [appellant] to a stay because that would mean that anytime an appeal is mooted, a stay would be required." *Id.* Thus, the irreparable injury prong also counsels against a stay.

### c. Substantial Injury to Other Parties

In its emergency motion, Voltaire stated that a stay "will not substantially harm any party involved . . . and in fact will only benefit the Debtor and interested parties by bringing in more cash to the estate." Docket no. 2 at 11. Palomar and Camco now inform the Court, however, that they are accruing $2,949 per day in interest on loans acquired to complete the sale. Docket no. 12-1 at 18; docket no. 14-1 at 7. This is a substantial injury to parties that, as determined by Judge King, have engaged in a good faith transaction.

### d. Public Interest

Finally, Voltaire states that a stay is in the public interest because it will "support[] public confidence in the bankruptcy process." Docket no. 2 at 11. This argument might cut against a stay, however. As Palomar argues, "[t]he bankruptcy court must be able to preserve the sanctity of the public auction process and support public confidence in the integrity of the auction process." Docket no. 12-1 at 18.

Thus, taken together, these factors do not indicate that a stay pending appeal is appropriate here. The temporary stay is dissolved and Voltaire's Motion to Stay is denied.

### Conclusion

Accordingly, the Court DENIES Voltaire's Motion to Expedite Briefing Schedule (docket no. 5).

Further, the Court GRANTS the motions to intervene of Camco (docket no. 8) and Palomar (docket no. 11). The Court also GRANTS the motions for leave to file response of Camco (docket no. 14) and Palomar (docket no. 12).

Finally, the Court DENIES Voltaire's Emergency Motion to Stay Sale Order Pending Appeal (docket no. 2). This order also immediately dissolves the temporary stay.

Voltaire should file any notice of issues on appeal within 14 days.

It is so ORDERED.

SIGNED this 10th day of April, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE